**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| S.C. and R.P., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0300-LM |
| | ) | |
| K.G., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Date Submitted: May 14, 2024
Date Decided: May 20, 2024

S.C. and R.P., *pro se Plaintiffs*.

K.G., *pro se Defendant*.

**GLASSCOCK, Vice Chancellor**

This expedited matter is before me on a dispute arising from the New Castle County decedent's estate of Ms. P.C.[1]  The unfortunate litigation is among four siblings (the "Siblings"), children of the decedent, concerning which of them should control the disposition of the decedent's remains.  K.G., who holds some authority over the estate under a small estate affidavit (an "SEA") issued by the New Castle County Register of Wills, would like Ms. P.C.'s remains cremated.  S.C., who also holds an SEA, issued a few days after the SEA held by K.G., wants to bury her mother's body, without cremation.  The remaining two siblings, R.P. and K.B., agree with S.C. (collectively, the "Majority").  The body is currently held at Congo Funeral Home in Wilmington; the reason for expedition is obvious.

The matter was adjudicated before a Magistrate in Chancery.[2]  It is now before me for *de novo* review under *DiGiacobbe v. Sestak*.[3]  The facts are not in dispute; the issue must be determined under a statute, 12 *Del. C.* § 264, which provides not for how a body should be disposed, but instead determines who has authority to make that decision.  Upon review, I determine that the will of the majority of the children of Ms. P.C. must prevail, in accord with Section 264.

---

[1] It is axiomatic that the decisions of this Court are public documents, and that citizens of Delaware have a right to understand proceedings in this Court, and the Court's decision-making process. This Memorandum Opinion is no exception.  I have redacted the names in this public version, however, for the same reasons guardianship matters are so redacted—the public's right to know would be little enhanced by disclosing the litigant's names, and the significant privacy rights involved, in my view, outweigh the negligible value of such disclosure.

[2] The matter is before me on exceptions of the bench ruling dated April 26, 2024.  Dkt. No. 16.

[3] 743 A.2d 180 (Del. 1999).

I have called this situation unfortunate; such it is. The children of Ms. P.C. are, I perceive, intelligent and decent people, acting in good faith and advocating that which they believe is in the interest of the family, as well as in accord with the wishes of Ms. P.C. herself, as they understand them. Nonetheless, the feelings among the family members run high, and threaten the relationships among these siblings. I hope a rapidly-issued decision here permits some end to the acrimony and provides the beginning of an opportunity for reconciliation.

## I. BACKGROUND

The few facts necessary to this decision are not in dispute. Ms. P.C. died on January 19, 2024. Her body remains at the Congo Funeral Home, which awaits the family's instructions as to disposition. Ms. P.C. died intestate, and with no instructions as to the disposal of her remains. At the time of her death, she was unmarried. There is no personal representative of the estate. K.G. received a small estate affidavit (an "SEA") in connection with Ms. P.C.'s estate in April 2024; S.C. also received an SEA, a few days later. K.G. wishes to cremate her mother's remains, with the ashes to be distributed among the four siblings; the Majority wishes to inter the body near relatives in Middletown.

## II. ANALYSIS

Section 264[4] is meant to address the precise situation before me. It directs

that if a decedent provided in a "declaration instrument" how her remains should be

disposed, that expression will be respected.[5]  Unfortunately, no will or other

declaration instrument so explaining Ms. P.C.'s wishes exists.  In that case, the

---

[4] 12 *Del. C.* § 264 provides, in relevant part, that:

> The right to control disposition of the last remains or ceremonial arrangements of a decedent vests in and devolves upon the following persons, at the time of the decedent's death, in the following order:
>
> (1)     The decedent if acting through a declaration instrument;
> (2)     The surviving spouse of the decent, if not legally separated from the decent;
> (3)     Either the appointed personal representative or administrator of the decedent's estate if such person has been appointed; or the nominee for appointment as personal representative under the decedent's will if a personal representative or administrator has not been appointed;
> (4)     A majority of the surviving adult children of the decedent whose whereabouts are reasonably ascertainable;
> (5)     The surviving parents or legal guardians of the decent whose whereabouts are reasonably ascertainable;
> (6)     A majority of the surviving of the decedent whose whereabouts are reasonably ascertainable;
> (7)     The person in the classes of the next degree of kinship, in descending order, under the laws of descent and distribution to inherit the estate of the decedent.  If there is more than 1 person of the same degree, ay person of that degree may exercise the right of disposition;
> (8)     In the absence of any person under paragraphs (a)(1) through (a)(6) of this section, any other person willing to assume the responsibilities to act and arrange the final disposition of the decedent's remains, including the personal representative of the decedent's estate or the funeral director with the custody of the body, after attesting in writing that a good faith effort has been made to no avail to contact the individuals under paragraphs (a)(1) through (a)(6) of this section;
> (9)     The public administrator for the decedent's estate.

[5] 12 *Del. C.* § 264(a)(1).

statute provides the surviving spouse with authority in this situation.[6] Again, the decedent was unmarried at the time of her death.

If neither writing nor surviving spouse is available, authority to determine the appropriate disposition of the remains falls to the "personal representative or administrator of the decedent's estate if such person has been appointed . . . ."[7] Here, no personal representative or administrator has been appointed. K.G. suggests, reasonably, that the holder of an SEA is akin to an appointed personal representative, and that, as holder of an SEA herself, she is the statutory decision-maker here. This is facially supported by 12 *Del. C.* § 101(6), which defines "Personal Representative" as, *inter alia*, an estate "administrator" and those "who perform substantially the same function . . . ." Upon review, however, I find that Section 264(a)(3) cannot be read so broadly, and that the SEA holder does not perform substantially the same function as does an appointed estate administrator.

Under 12 *Del. C.* § 1505, any one of the Siblings was eligible to be appointed as administrator of the estate by the Register of Wills.[8] If (as would likely have been the case here) a dispute arises as to who should be appointed the administrator, then the disagreeing survivors must petition the Court to determine who should so serve. Section 1501 provides that "[n]o one shall act . . . as administrator of a domiciliary

---

[6] 12 *Del. C.* § 264(a)(2).
[7] 12 *Del. C.* § 264(a)(3).
[8] 12 *Del. C.* § 1505.

decedent's estate . . . without letters . . . of administration being granted in accordance with" title 12, by the Register of Wills.[9] That, I note, has not occurred here.

Once an administrator is chosen, she must take an oath of fidelity to the estate, and may be required to provide a bond.[10] The fiduciary duties an appointed estate administrator undertakes include a duty to create and file an inventory and appraisal of the decedent's property.[11]

By contrast, where no letters of administration have been granted to an estate administrator as just described, a wide array of individuals may seek to distribute the estate under a small estate affidavit, so long as (1) no personal representative has been appointed or is pending appointment; (2) thirty days have passed since the death; (3) the value of the estate is of no more than $30,000; (4) the decedent's debts have been paid; (5) any spouse's allowance has been paid; (6) the decedent did not own real property; and (7) an affidavit attesting the foregoing is provided to creditors of the estate.[12] The affiant is then deemed a receiver for the small estate, charged with marshalling assets and distributing them according to any will, or by statute.

---

[9] 12 *Del. C.* § 1501.
[10] 12 *Del. C.* §§ 1509, 1521 et seq.
[11] 12 *Del. C.* § 1905.
[12] 12 *Del. C.* § 2306.

Section 2306 spells out the limited authority involved.[13] It is this statutory receivership that is colloquially referred to as a small estate affidavit, here, SEA.

This is a case of first impressions construing whether Section 264(a)(3) provides to the holder of an SEA the discretion to dispose of the decedent's remains. I find the opinion in *Hollerman v. Hicks*[14] helpful. That case addressed whether a release of a tortfeasor on behalf of an estate by the holder of an SEA was binding, an issue admittedly not before me. But the *Hollerman* court's analysis of the limited nature of a receiver under an SEA is persuasive here. The court in *Hollerman* noted that:

> Section [ ] 2306 was enacted to allow parties to distribute a small estate where all debts of the estate are ascertainable and have been paid, and where the value of the personalty does not exceed $20,000.[15] This statute enables parties with small estates to avoid the sometimes lengthy and expensive process of probate. However, the statute specifically states that it bestows these powers upon an individual solely for the purpose of distribution. There are many responsibilities undertaken by a fiduciary such as an administrator or executor, only a part of which includes the distribution of property. Section 1501 is designed to protect a decedent's estate and its beneficiaries from the unauthorized acts of others and to ensure that there is a party to hold responsible to the estate and its beneficiaries for those actions which are in breach of the personal representative's fiduciary duties.[16]

---

[13] *See id.*

[14] 1997 WL 358453 (Del. Super. Apr. 8, 1997).

[15] I note that the statute has been amended post-*Hollerman* to include estates up to $30,000.

[16] *Id.* at *3 (footnotes omitted).

I find the receiver under an SEA to be sufficiently dissimilar to an appointed estate administrator, in both manner of appointment and duties, to not come within the ambit of Section 264(a)(3). Therefore, there is no appointed personal representative or administrator under Section 264(a)(3). In that case, Section 264(a)(4) controls; decisions as to the remains are under the control of a majority of the decedent's adult children. Here, that decision falls to S.C., R.P., and K.B., the Majority. Those Siblings desiring burial rather than cremation form the majority, and given these facts and under our statute, their decision must prevail.

Even if the holder of an SEA were empowered to make the decision under Section 2306, I note, there are *two* holders of a valid SEA here, K.G. and S.C. Because they are in disagreement as to disposal of Ms. P.C.'s remains, presumably the matter would fall to the majority even if they were deemed to be estate administrators. K.G. suggests that I should apply a rule that the holder of the SEA *issued first* should have priority, but that proposed rule is not based on the language of the statute nor, in my opinion, on equity. Because of my finding above, I need not reach this issue, however.

### III. CONCLUSION

To recapitulate, a dispute exists among the Siblings as to the proper disposition of Ms. P.C.'s remains; the matter raises a purely statutory question under 12 *Del. C.* § 264. I apply that statute here, and find that the will of the majority of

Ms. P.C.'s children applies under Section 264(a)(4). Accordingly, the Majority has the right to decide how Ms. P.C.'s remains will be disposed. The exceptions are granted. An order is attached, directing the Congo Funeral Home to release the remains to S.C., R.P., and K.B.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| S.C. and R.P., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) C.A. No. 2024-0300-LM |
| | ) |
| K.G., | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

WHEREAS, on January 19, 2024, P.C. (the "Decedent") died;

WHEREAS, the Decedent died intestate, leaving four adult children: S.C., R.P., K.G., and K.B. (collectively, the "Siblings");

WHEREAS, on March 25, 2024, S.C. and R.P. filed a Complaint requesting the right to control the disposition of their mother's remains;

WHEREAS, on April 26, 2024, a hearing was held and the Magistrate Judge in Chancery issued her bench ruling;

WHEREAS, on April 26, 2024, S.C. filed a notice of exceptions to the Magistrate's report;

WHEREAS, on May 14, 2024, a hearing was held regarding S.C.'s exceptions;

IT IS HEREBY ORDERED, this 20th day of May, 2024, as follows:

1. Plaintiff S.C.'s exceptions to the Magistrate Judge's April 26, 2024 Final Report are GRANTED.

2. Pursuant to 12 *Del. C.* § 264(a)(4), the majority of the Siblings are empowered to determined the arrangements for the disposition of the remains of the Decedent.

3. Accordingly, Congo Funeral Home should release the Decedent's remains to S.C., R.P., and/or K.B. for burial.

IT IS SO ORDERED.

/s/ Sam Glasscock III
Vice Chancellor